those funds only to pay the Medicaid claims of healthcare providers. 42 C.F.R. § 430.30(d). The funds made available to the state thus remain federal funds, in a Federal Reserve account, until they are drawn by the state and used to pay the Institutional Pharmacy Defendants' claims.

374.     The federal government also "approves" within the meaning of the FCA the claims submitted and paid through the Medicaid program. When a state presents its Form 64 (*i.e.,* the quarterly report of actual expenditures) to CMS, the amounts of any fraudulent claims the state paid will be included in those reports. Based on the information in the reports, CMS determines and approves whether the claims that the state paid with federal funds were appropriate. If CMS determines that certain claims paid by the state were improper, CMS may recoup the amount of the erroneously expended funds by reducing the amount of money provided to the state during the next quarter.

375.     Because the Form 64 constitutes the United States' means for approving and paying the amount of federal funds expended by the state, these reports overstate the amount of federal funds to which the state was entitled by the amount fraudulently paid. They are, therefore, false records or statements caused to be made or used to get false claims paid and approved by the United States.

376.     In 2006, with the advent of Medicare Part D, for beneficiaries dually eligible for both Medicaid and Medicare programs, the Institutional Pharmacy Defendants false claims for reimbursement were submitted to Medicare Prescription Drug Plans ("PDPs"). In turn, the PDPs submitted these false claims for reimbursement to the federal government for payment.

377.     The claims for reimbursement submitted by the Institutional Pharmacy Defendants to Federal Programs, and to the *Qui Tam* States (which in turn caused the *Qui Tam* States to submit these claims for reimbursement to the federal government pursuant to FMAP),

FILED UNDER SEAL

constitute false claims as a result of the claims for reimbursement for off-label prescriptions, and claims tainted by illegal kickbacks.

**B.  OMNICARE AND PHARMERICA'S DOMINATION OF THE LTC PHARMACY MARKET**

378.  Defendants Omnicare and PharMerica provided services to nursing homes and other LTC facilities beyond simply dispensing drugs. Prior to the introduction of Medicare Part D in 2006, Defendants Omnicare and PharMerica provided many of these services to LTC facilities at little or no additional charge (*i.e.,* bundled with charges for other goods and services). Defendants Omnicare and PharMerica generally charged LTC facilities a nominal fee for consultant pharmacy services and for maintaining medication records. A number of other services were provided at no additional charge. The below-market rate for these services was intended to allow Defendants Omnicare and PharMerica access to the far more lucrative deals with drug makers like Abbott, who were willing to pay kickbacks to ensure their drugs' favorable status.

379.  Defendants Omnicare and PharMerica were able to leverage their size to negotiate large rebates and other monies from Defendant Abbott. Defendants Omnicare and PharMerica were also able to negotiate these kickbacks by ensuring that they used a certain percentage of the Depakote® Products.

380.  At all times material hereto, Defendants Omnicare and PharMerica have been engaged in the practice of pharmacy and are licensed to do so under the laws of the states in which their pharmacies are located. As licensed pharmacies, Omnicare and PharMerica owe certain duties to the LTC patients whose prescriptions they receive, fill, or arrange to fill. Omnicare and PharMerica employ licensed professional pharmacists and licensed, certified, or

137

designated pharmacy technicians who perform or assist in providing professional pharmacy services to patients.

381.    Under state pharmacy laws, no pharmacist may dispense one or more doses of a drug to a patient unless the pharmacist, prior to the actual physical transfer of the drug: 1) interprets the prescription order; 2) assesses the prescription order for potential adverse reaction, interaction, and dosage regimen he deems appropriate in the exercise of his professional judgment; 3) contacts the prescriber to resolve any ambiguities in interpretation, or issues involving potential adverse reaction, interaction, or dosage; and 4) certifies that the drug called for by the prescription order is ready for transfer.  Pharmacists, especially consultant pharmacists, also frequently counsel patients and prescribers on appropriate drug therapies..

382.    Omnicare and PharMerica are the owners and alter egos of licensed LTC pharmacies.  Omnicare operates 209 pharmacies in 47 states and the District of Columbia, including 10 pharmacy services facilities in Virginia.  PharMerica operates 100 pharmacy services facilities in 40 states, including 3 pharmacy services facilities in Virginia.

383.    Each of the Institutional Pharmacy Defendants' licensed pharmacists and pharmacy technicians, had a duty to disclose all relevant information to both physicians and patients in providing professional advice, counseling, or services.  This duty arises from the nature of the transactions involved in and pharmaceutical care, drug therapy management, and other professional services provided in connection with the provision of prescription drugs.  This duty also arises from the nature of the relationship among the parties—the treating physician, the dispensing pharmacy (and its licensed professional pharmacists), and the patient—in which the patient must rely on the professional expertise and advice of the pharmacist and physician in the ingestion, application, and use of potentially hazardous pharmaceuticals.

138

FILED UNDER SEAL

384.    At all times material hereto, under state pharmacy laws, Defendants Omnicare and PharMerica could only dispense drugs through licensed pharmacists acting upon lawful prescriptions issued by licensed physicians and other authorized prescribers.  That is, the Omnicare and PharMerica pharmacist consultants were not authorized under the law to prescribe either a type, form, or dosage of a prescription drug.  Such prescriptions could only be made by physicians based upon their independent, professional judgment.

385.    It was the plan and purpose of Defendant Abbott's payment of kickbacks to Defendants Omnicare and PharMerica (hereinafter the "Fraudulent Kickbacks") to defraud the Government by inducing Defendants Omnicare and PharMerica to favor the dispensing of Defendant Abbott's Depakote® Products. It was the plan and purpose of the Fraudulent Kickbacks to defraud the United States and the *Qui Tam* States by offering to provide, or by providing, or paying money, things of value, and compensation to unlawfully induce Defendants Omnicare and PharMerica to refer Defendant Abbott's Depakote® Products for payment by Government health plans, with the intent that state and federal Government programs would pay for the Depakote® Products.

386.    The kickback monies Defendant Abbott paid to Defendants Omnicare and PharMerica represented a conflict of interest that is particularly offensive given the institutional arrangements in LTC facilities and the vulnerability of the institutionalized patient population. Defendants Omnicare and PharMerica exercised considerable power to move market share to Defendant Abbott's Depakote® Products, even if lower-cost alternatives were more clinically beneficial to patients.

387.    These incentives triggered over-utilization of the Depakote® Products, adverse drug events, and increased Medicaid and Medicare expenditures.

139

### 1. Abbott's Payment of Rebates to Induce Omnicare to Prefer the Depakote® Products

388. Omnicare began in 1994 to develop geriatric-specific management programs and guidelines for the treatment of certain disease states. Among the disease states for which it had developed management programs were depression, osteoporosis, atrial fibrillation and anticoagulation for stroke prevention, immunization against influenza and pneumococcal disease, pain management, and urinary health management. All of these so-called "disease management programs" were ostensibly set up through the Philadelphia College of Pharmacy, and resulted in the publication of the Omnicare Geriatric Pharmaceutical Care Guidelines® ("Care Guidelines"), which were first published in 1994 and thereafter updated annually. According to Omnicare's website, the Care Guidelines are "[t]he nation's first clinically based formulary tailored to the geriatric population, this comprehensive reference ranks drugs as Preferred, Acceptable or Unacceptable based solely on clinical variables applied to the elderly for specific disease states." *See* http://www.omnicare.com/medications.asp (lasted checked on January 12, 2010).

389. Defendant Omnicare touted the Care Guidelines as employing "best practices" in providing care to the elderly. Using the Care Guidelines, "Omnicare Consultant Pharmacists, aided by a comprehensive system employing information technology and clinical 'best practices, work with physicians to identify patients at risk for a given disease state and ensure that optimal drug therapy is received and unnecessary healthcare expenditures are eliminated."

390. What Defendant Omnicare did not make public was that behind the disease management programs were lucrative financial deals such as the deal with Defendant Abbott for the Depakote® Products. In 1999, Defendant Abbott and Defendant Omnicare negotiated a

140

disease management agreement for a program to treat behavior disturbances associated with dementia. The lead negotiator for Abbott was Gayle M. Bogenschneider, National Account Manager, LTC Sales. When Bogenschneider announced to the Abbott LTC Sales Force that they had reached a new deal with Omnicare, which was to launch in February 2000, she told the LTC Sales Force they "need[ed] to develop strong relationships with all of the [Omnicare P&T Committee] reviewers and committee members so that we can gain access to these individuals when we need to." Attached to the memo to the Sales Force are (1) an article from the September 1999 issue of the periodical Formulary entitled "Developing geriatric-specific pharmacotherapy guidelines: Insights and challenges," Vol. 34, page 364; and (2) a list of the Omnicare Pharmacy and Therapeutics Committee ("P&T Committee") members and reviewers (so that the Sales Force could start working to influence these individuals to gain their support).

391. Defendant Omnicare's agreement with Defendant Abbott for Depakote® became effective in February 2000. Under the agreement Defendant Omnicare agreed to prefer the Depakote® Products over other competing (frequently less expensive) drugs for the treatment of agitation and aggression associated with dementia. The key players for Abbott were Bogenschneider, Dave Molnar (National Manager, Non-Retail Account Manager), Dennis Schreiber (National Account Manager – "NAM"), and Peter Warnes (NAM). These individuals were responsible for all Omnicare contracting for the Depakote® Products as well as national pull-through strategies.

392. Defendant Abbott, in violation of federal and state anti-kickback laws, entered into agreements with Omnicare to pay illegal remuneration in the form of cash rebates (sometimes referred to within Omnicare as "post-purchase discounts") to Omnicare to induce its purchases of the Depakote® Products.

141

FILED UNDER SEAL

393.    These agreements set up a "tiered" rebate structure, with the amount of the available rebate (expressed as a percentage of the purchase price) increasing as Omnicare increased its purchases of the Depakote® Products as a percentage of its total purchases of competing drugs used to treat the same conditions. This was known as a "market share rebate." In exchange for these rebates, Omnicare took affirmative steps to shift its customers, including Medicaid customers, over to the Depakote® Products.

394.    As part of pulling through the deal with Abbott, Omnicare delivered physician authorization letters ("PALs") to all physicians writing prescriptions for residents in facilities it serviced as one means to switch from competing psychotropic drugs to the Depakote® Products. The PAL stated that the Omnicare pharmacy would substitute the Depakote® Products for other psychotropic drugs if the doctor signed the form authorizing the pharmacy to do so. However, the PAL misrepresented the comparative costs and benefits of the Depakote® Products. When the switches were accomplished through misleading PALs, these methods often violated state pharmacy laws requiring that physicians approve all prescriptions.

### 2.    Kickbacks Paid to Omnicare in the Form of ReView Program Grants to Promote the Off-Label Use of the Depakote® Products

395.    Defendant Omnicare solicited from Defendant Abbott, and in turn Defendant Abbott agreed to pay (and did pay) Omnicare illegal remuneration in exchange for inducing sales of its drugs to Medicaid customers under the guise of cash "grants" relating to the Omnicare "ReView" program, which was funded as part of the disease management program the parties had entered into. Omnicare maintained that its ReView program educated Omnicare pharmacists about the underutilization of many drugs that could be beneficial for the elderly (which included the Medicaid-eligible population in the LTC facilities serviced by Omnicare pharmacies). Under

142

the "ReView" program, Omnicare agreed to "take another look at undertreatment and inappropriate treatment" allegedly to "improve the quality of life for the residents we serve."

396.    In reality, in exchange for receipt of illegal kickbacks from Defendant Abbott, under the "ReView" program, Defendant Omnicare engaged in various illegal activities including illegal off-label promotion using materials designed and/or funded by Abbott (including a CD of off-label materials touting the Depakote® Products and distribution of the Pocket Guide) to convince LTC healthcare professionals to use the Depakote® Products off-label instead of other, frequently less expensive, alternative drugs (including lithium and valproic acid).

397.    Beginning on February 8, 2000—as part of its illegal kickback agreement with Defendant Abbott to promote the Depakote® Products off-label—Defendants Abbott and Omnicare held ReView "Launch Meetings" around the United States for the Omnicare consultant pharmacists at which they received training in the off-label use of the Depakote® Products for the "Treatment of Behavioral Symptoms In the Elderly with Dementia." The programs were "sponsored" by Abbott and "developed by" Insight Therapeutics, LLC, located in Norfolk, Virginia.

398.    ReView Launch Meetings were held on February 8-9 in Toledo, Ohio; February 16-17 in St. Louis, Missouri; February 29 in Princeton, New Jersey; March 1 in Peabody, Massachusetts; March 2-3 in Cincinnati, Ohio; March 6-7 in Minneapolis, Minnesota; March 7 in Virginia; March 8 in Cromwell, Connecticut; March 10 in Pittsburg, Pennsylvania; March 28 in Los Angeles, California; March 29 in Seattle, Washington; April 10 in Atlanta, Georgia; April 11 in Tampa, Florida; April 12-13 in Chicago, Illinois; April 14 in Oklahoma City, Oklahoma; and April 18 in Shreveport, Louisiana.

143

399. During the Launch Meetings, there were various presentations given by speakers concerning:

- "Medication Management of Behavioral Symptoms In Elderly With Dementia." The presentation was "sponsored" by Defendant Abbott, and discussed the off-label use of the Depakote® Products.

- Case Studies concerning the "Treatment of Behavioral Symptoms in the Elderly with Dementia, featuring off-label use of the Depakote® Products.

- The "Omnicare Behavior Management Guide," developed by Insight Therapeutics, LLC and sponsored by Abbott.

400. Included in the ReView Launch materials provided to the Omnicare pharmacy consultants were:

- The McGraw-Hill Consensus Guidelines, which (as alleged earlier) were funded by Defendant Abbott;

- A "Quick Reference Guide to Treatment of Behavioral Symptoms in the Elderly with Dementia: A Management Program From Omnicare, Inc." This was developed by Insight Therapeutics, LLC and "Sponsored by Abbott Laboratories." The Reference Guide discusses Omnicare's use of the treatment algorithms borrowed from the McGraw-Hill Consensus Guidelines, and indicates that Depakote® is a "first line" treatment for agitation and aggression associated with dementia.

- Laminated copies of the treatment algorithms entitled "Steps to Behavior Management in Residents with Dementia." Again, the algorithm leads to the conclusion the Depakote® Products are a first-line treatment for agitation and aggression.

144

401.    Also included in the ReView Launch Meeting materials were descriptions of the roles Defendant Abbott and Defendant Omnicare employees would play in this illegal activity:

- Omnicare's Consultant Coordinators/Pharmacists were in charge of presenting in-services about the off-label use of the Depakote® Products for the treatment of behavior symptoms at nursing homes. They were to develop a list of physicians who should receive the Quick Reference Guide and mail a copy within 14 days of the Launch Meeting. They were instructed to mail a letter to the Directors of Nursing and LTC Administrators.

- Abbott's LTC Sales Force was to contact the key physicians impacting nursing homes and meet with the Omnicare Coordinator/Consultant Pharmacists to establish initiatives at the local level.

- Omnicare's designated Regional Clinical Directors and "Champions" were to lead efforts to convert scripts to the Depakote® Products.

402.    Under the terms of the ReView Program, Omnicare agreed that it would have its consultant pharmacists nationwide conduct patient chart reviews for all LTC residents with behavior-related diagnoses. The consultants were to focus on situations in which multiple LTC residents were managed by a single physician. Omnicare's consultants then wrote PALs to the treating physicians (letters which were "prepared" by Insight Therapeutics under the direction and control of Defendant Abbott) recommending that the patients' prescriptions be converted to the Depakote® Products.

403.    As part of the ReView Program, Defendant Abbott's LTC Sales Force continued to work directly with Defendant Omnicare's consultants to train them on the off-label uses of the Depakote® Products.

145

FILED UNDER SEAL
13788.0060J/3693580v16

### 3. Abbott and SunScript Agreement to Convert Depakote® to Off-Label Use of Depakote ER®

404. Abbott entered into similar agreements with other institutional pharmacies which later became part of Omnicare. One such institutional pharmacy was SunScript Pharmacy Corporation ("SunScript"), which until 2003 (when Omnicare acquired it for $75 million) was a division of Sun Healthcare Group (a nursing home chain). In 1999, Defendant Abbott entered into a rebate agreement with SunScript which provided rebates to SunScript for putting various Abbott products on its formulary in a preferred status. The Depakote® Products were later added to the rebate agreement. Under the terms of the Agreement, SunScript agreed that it would engage in a therapeutic interchange program to convert Depakote® scripts to Depakote® ER even in instances in which the use was off-label.

405. As evidence of the influence such an agreement had on physicians prescribing Depakote ER® despite its off-label use, the submission of false claims, and potentially negative impact on the patient, on August 8, 2001, a SunScript pharmacy technician submitted a Treatment Authorization Request ("TAR") to MediCal requesting a retroactive approval of the conversion SunScript had made of a male Medicaid patient's Depakote® 500 mg per day to Depakote ER® 500 mg per day for the treatment of depression, schizophrenia, and bipolar disorder. The original TAR was denied by MediCal because Depakote ER® was "non-formulary" at the time, only had an approved indication for the treatment of migraines, and was moreover considered "sub-therapeutic" for the treatment of convulsions. The MediCal reviewer, Terry Tietz, then asked that SunScript verify the physician wanted to override the off-label limits on Depakote ER®. SunScript then resubmitted a revised TAR stating candidly that "M.D. changed med to Depakote ER due to contract" (presumably a reference to the SunScript/Abbott conversion agreement); however, the Medicaid reviewer again rejected the explanation and

FILED UNDER SEAL

asked that the physician certify the override on the off-label use. SunScript once again resubmitted the TAR--this time stating that the patient had tried alternative drugs unsuccessfully, that the physician had instructed that the prescription be switched (this time with no mention of the contract), and that Depakote ER® was found to be "effective in mood stabilization" for this patient. Thereafter, the MediCal reviewer approved the TAR for the off-label use of Depakote ER®, which was then submitted for reimbursement by MediCal. The conversion to Depakote ER® was driven by the contract between SunScript and Abbott, was all off-label, and the use on this patient suspect for the reasons articulated by MediCal's reviewer. Relator Spetter has submitted these ITAR materials to the Government as proof that off-label claims were submitted to MediCal as a result of the illegal off-label promotion by Defendants Abbott and Omnicare.

### 4. Abbott and Omnicare Enter Into Fraudulent Depakote ER® Initiative

406. On or about March 25, 2003, Defendant Abbott and Defendant Omnicare entered into a new agreement under which Abbott paid Omnicare to engage in an "Interchange Protocol" (the "Omnicare ER Initiative") to convert Depakote® and valproic acid ("VPA," a generic, older and much less expensive version of Depakote®) to Depakote ER®. In this way, Defendant Omnicare became a willing participant in the illegal, systematic off-label promotion of the Depakote® Products. This was at the same time as Defendant Omnicare's termination of a similar conversion program it had been engaged in to convert scripts to Risperdal®, an anti-psychotic drug manufactured by Johnson & Johnson. At the time, the FDA had announced it had determined that "Elderly Patients with dementia-related psychosis treated with atypical antipsychotic drugs are at an increased risk of death compared to placebo."

407. Defendants Abbott and Omnicare used the term "therapeutic interchange" to characterize the schemes pursuant to which Abbott paid kickbacks to Omnicare to increase

147

Depakote ER®'s market share at the expense of its competitors (including less expensive drugs such as lithium and valproic acid) in order to earn the rebates and other available cash inducements.

408.    Under the terms of the Omnicare ER Program, Omnicare agreed that it would have its consultant pharmacists nationwide conduct patient chart reviews for all LTC residents with behavior-related diagnoses. The consultants were to focus on situations in which multiple LTC residents were managed by a single physician. Omnicare's consultants then wrote PALs to the treating physicians (letters which were drafted by Defendant Abbott), recommending that the patients' prescriptions be converted to Depakote ER®. In over 80 percent of the cases, the physician approved the consultant pharmacists' recommendations.

409.    In most instances, however, the Depakote ER® conversions were based on: (a) the illegal promotions of the off-label use of Depakote ER®, and/or (b) unsupported claims of Depakote ER®'s superiority to Depakote® and VPA. At the time, Depakote ER® was only approved to treat migraines and epilepsy. The conversions to Depakote ER® oftentimes resulted in increased costs to the federal and state Governments (especially where Depakote ER® replaced VPA), and effectively placed patients on a drug that had no such on-label approval by the FDA.

410.    All of the thousands of claims that Omnicare submitted, or caused to be submitted, to Medicaid for the Depakote® Products purchased from Abbott during the period were false or fraudulent due to the illegal kickbacks that Abbott paid to induce Omnicare to make those purchases for patients insured by Medicaid.

### 5.    Promotional Events for Health Care Professionals Treating Patients at Facilities Serviced by Omnicare

148

FILED UNDER SEAL
1337888.00601/36035820v.6

411.    The Abbott LTC sales force, as part of their promotional "War Chest" activities, regularly set up promotional activities at which its KOLs gave programs for health care professionals treating patients serviced under an Omnicare contract.

412.    On April 5, 2006, for example, Dr. Daniel Sewell gave a dinner program presentation funded by an Abbott unrestricted educational grant on "The Treatment of Manic Symptoms in the Elderly" for physicians, nurses, and pharmacists who worked in (or treated patients at) Omnicare-serviced LTC facilities at Donovan's Steak House (a four star restaurant in San Diego). The sponsor was ABcomm, and the honorarium was $750. Dr. Sewell's presentation was promotional and discussed the off-label use of Depakote® for the treatment of agitation and aggression in the treatment of dementia.

413.    Another program funded by Abbott was held on March 2, 2006, where Dr. Dan Anderson, a geriatric psychiatrist from Folsom, California, led a physician round table on "The Treatment of Manic Symptoms in the Elderly" at Rancho Bernardo Inn (a four star restaurant in San Diego, California). The sponsor was ABcomm, Inc. and the honorarium was $1,000. There were approximately 15 physicians and 5 pharmacists (including Omnicare consulting pharmacists) in attendance. The off-label use of the Depakote® Products was promoted to the participants.

414.    The table below provides a sample of instances where a physician was influenced to prescribe a Depakote Product based on Abbott's off-label marketing and misrepresentations, and where claims for payment were submitted by Omnicare to the government. These false claims were all submitted to the government by Defendant Omnicare in 2001:

| Patient | Facility | Dr. | Diagnosis | Prescription |
|---------|----------|-----|-----------|--------------|
| A | Valle Vista | Jacob Flores | Depression w/agitation | Depakote 500 mg |

FILED UNDER SEAL

| Patient | Facility | Dr. | Diagnosis | Prescription |
|---------|----------|-----|-----------|--------------|
| B | Casea de Las Campanas | Alan Berkowitz | -- | Depakote Sprinkles 125 mg |
| C | Magnolia Special Care | Edward Esteb | Mood swings and lability | Depakote Sprinkle 125 mg |
| D | Magnolia Special Care | Stephen Reitman | Psychosis and agitation | Depakote 125 mg |
| E | Scripps Ocean View | Robert Yuhas | Mood stabilizer/dementia | Depakote Sprinkles 125 mg |
| F | Scripps Ocean View | Robert Yuhas | Agitation | Depakote Sprinkles 125 mg |
| G | Scripps Torrey Pines | Marilyn Carlin | Mood Dyscontrol | Depakote Sprinkles 125 mg |
| H | Scripps Torrey Pines | Michelle DeVor | Emotional Lability, Tearfulness, Delusional Thinking | Depakote EC 125 mg |
| I | Carmel-Mountain Sunbridge | Abraham Joseph | -- | Depakote Sprinkles 125 mg |
| J | Escondido East-Sunbridge | James Michelson | -- | Depakote Sprinkles 125 mg |
| K | Vista Sunbridge | Karl Steinberg | -- | Depakote Sprinkles 125 mg |

Depakote EC is the same as Depakote®. Relator Spetter has provided examples of thousands of false claims to the Government, but is not including those claims here for the purposes of HIPAA compliance. *See* 45 CFR § 164.502(j)(1).

### D. ABBOTT'S PAYMENT OF KICKBACKS TO DEFENDANT PHARMERICA

415. In 1997, Defendant Abbott and Defendant PharMerica (and/or its predecessors in interest) entered into a "Corporate Agreement." The Agreement with PharMerica included the payment of rebates to PharMerica to engage in a therapeutic interchange program to convert

150

prescriptions from non-Abbott drugs to Abbott drugs. At that time, the Depakote® Products were not included in the Agreement.

416. Later, in or around 2000, the parties entered into an agreement under which Defendant PharMerica would undertake a therapeutic interchange program to convert Depakote® scripts to Depakote ER®. The therapeutic interchange program required Defendant PharMerica to add Depakote ER® to a "Global Authorization Protocol" under which physicians agreed to approve an auto-substitution program to convert Depakote® patients to Depakote ER® patients before a prescription was even written, without regard to whether such an interchange was medically appropriate for a particular patient. Physicians were then asked to sign a "PharMerica Formulary Management Program Approval" form, allowing a blanket future authorization for PharMerica to switch from the ordered medication to the ER alternative. For example, doctors who signed these forms include (all of them from Chula Vista, California and all signed on June 29, 2006): Dr. Nisha Lakhan; Dr. Kaisey Mushrik; and Dr. Michael Chambers.

417. As part of the agreement, Defendant PharMerica agreed that it would affirmatively promote the Depakote® Products to treating physicians off-label. For example, in order to pull through the agreement with Defendant PharMerica, Defendant Abbott's LTC Sales Force was directed to work directly with Defendant PharMerica's consultants to train them on the off-label uses of the Depakote® Products.

418. One such pull through program occurred on June 20, 2000, when Dr. Alan L. Schreiber (the Medical Director at the Department of Psychiatry, Cedars-Sinai Medical Center, Los Angeles, California) gave a presentation funded by an Abbott unrestricted educational grant on "The Role of Mood Stabilizers in the Treatment of Behavior Disorders in Dementia Patients"

151

at George's at the Cove (a five star restaurant in La Jolla, California). There were fifty-three health-care professionals in attendance who either worked in or treated residents of LTC facilities serviced by PharMerica. The sponsor was ABcomm and the honorarium was $1,000. The presentation discussed the off-label use of Depakote® to treat agitation and aggression in the treatment of dementia.

419.    Another such pull through program occurred on September 25, 2001, when Dr. Dan Anderson (a geriatric psychiatrist at Psychcare Alliance in Lakewood California) gave a presentation funded by an Abbott unrestricted educational grant on "New Developments in Treating Elderly Patients with Agitation and Aggression in LTC Facilities" at Kyo-Ya Restaurant in Honolulu, Hawaii. The host for the event was PharMerica. There healthcare professionals in attendance either worked in or treated residents of LTC facilities serviced by PharMerica. The presentation discussed the off-label use of Depakote® to treat agitation and aggression in the treatment of dementia.

420.    Another such pull through program was held on December 3, 2003, when Dr. Doe gave a presentation funded by an Abbott unrestricted educational grant on "The Treatment of Agitation and Aggression in Dementia and Other Psychiatric Disorders in Long Term Care" at Flemmings' Steak House in San Diego, California. PharMerica was the sponsor. Because CME credit was offered, the presentation could not be promotional. Dr. Doe did not disclose any financial relationships, although he had been a KOL and speaker at prior programs funded by an Abbott unrestricted educational grant. The presentation discussed the off-label use of Depakote® to treat agitation and aggression in the treatment of dementia.

421.    PharMerica regularly promoted the off-label use of the Depakote® Products. For example, on the Global Authorization form PharMerica asked treating physicians to sign,

152

PharMerica explained the justification for the conversion from Depakote® to Depakote ER®, specifically stating that Depakote ER® was "effective for behavior disorders (anxiety, agitation) and psychotic symptoms," all of which were off-label uses of the drug. PharMerica also is listed as a "sponsor" of the off-label Pocket Guide (referred to above) and provided thousands of copies of the Pocket Guide to health care professionals treating patients in LTC facilities it serviced.

422. As part of their chart reviews, PharMerica consultant pharmacists used "macros" (preformatted scripts, which had been prepared by Defendant Abbott) during their review of patient prescriptions to convince physicians to switch to the Depakote® Products. The macros used by consultant pharmacists at PharMerica were prepared by the Center for Health Information with funding from Defendant Abbott, and allowed the PharMerica consultant pharmacists simply to enter a macro code for each diagnosis (*e.g.,* the "BMMS" macro was used for a resident with dementia who had symptoms of a behavior disorder with manic features who had not received treatment). The macro was then entered into the PharMerica computers, which printed out a recommendation from the PharMerica pharmacist consultant explaining the recommendation to use Depakote® (including an explanation for the off-label use of the drug and appropriate dosing) which was then forwarded to the physician. The macros were intended to document the alleged medical justification for using the Depakote® Products off-label using a macro recommendation form which had been sponsored by Defendant Abbott.

423. Another way in which Defendant PharMerica engaged in illegal off-label promotion was in circulating materials concerning the off-label use of Depakote Sprinkles for use in nursing homes. At all times material hereto, Depakote Sprinkles only had FDA approval

153

for treatment of epilepsy in *children*, and at no time was approved to treat the elderly, or to treat agitation and aggression associated with dementia.

424. Thousands of converted claims that PharMerica submitted, or caused to be submitted, to Medicaid for the Depakote® Products purchased from Abbott during the period from January 1, 2000 were false or fraudulent due to the illegal kickbacks that Abbott paid to induce PharMerica to convert Medicaid patients from Depakote to Depakote ER. Examples of such false or fraudulent claims whereby Defendant PharMerica's consultants affirmatively converted Depakote® prescriptions to Depakote ER® prescriptions include:

| Patient | Doctor | Date | Original Drug | Converted Drug |
|---------|--------|------|---------------|----------------|
| W | Celestine Aramburo | 03/22/05 | Depakote 125 mg | Depakote ER 250 mg |
| X | Alan Chang | 03/22/05 | Depakote 125 mg | Depakote ER 250 mg |
| Y | Edward Curley | 03/22/05 | Depakote 250 mg | Depakote ER 500 mg |
| Z | John Daley | 03/22/05 | Depakote 250 mg | Depakote ER 250 mg |

Relator Spetter has provided examples of thousands of false PharMerica claims to the Government, but is not including those claims here for the purposes of HIPAA compliance. *See* 45 CFR § 164.502(j)(1).

## XIII. ABBOTT'S FRAUDULENT MARKETING SCHEME VIOLATED FEDERAL PROGRAM LIMITATIONS

425. Abbott could lawfully market the Depakote® Products in a number of ways, including the dissemination of truthful information that complied with federal law. Had it wanted to gain approval for the use of the Depakote® Products in the treatment of anger, aggression, and agitation resulting from dementia, it could have complied with the rules and regulations set forth by the FDA. Given the fact that its key 738 Study had failed, however,

154

Defendant Abbott knew the FDA would not approve the Depakote® Products for these conditions.

426. Because of the failure of the key 738 Study it hoped to use to garner FDA approval, Abbott made the deliberate decision to bypass the FDA process, violate federal law, and knowingly and deliberately promote the Depakote® Products for non-FDA approved uses ("off-label" uses).

427. Abbott knew, or could reasonably foresee, that this scheme would lead to violations of federal statutes and regulations designed to restrict reimbursement to Federal Programs such as Medicaid and Medicare Part D.

428. Additionally, Abbott's scheme violated Medicaid and Medicare reimbursement limitations.

429. Whether a drug is FDA-approved for a particular use will largely determine whether a prescription for that drug will be reimbursable under Federal Programs, including the Medicaid and Medicare programs.

430. In 1990, Congress passed the Budget Reconciliation Act which limited reimbursement for prescription drugs to "covered outpatient drugs." Covered outpatient drugs only include drugs used for "medically accepted indications." A medically-accepted indication is a use which has been approved by the FDA or one which is supported by specific drug reporting compendia set forth in the Medicaid and Medicare statute, 42 U.S.C. § 1396r-8(k)(6). Reimbursement by Medicaid and Medicare is, with only one rare exception, prohibited if the drug is not being used for a medically accepted indication. 42 U.S.C. § 1396r-8(k)(3).

431. Congress has adopted a compendia-based system for determining appropriate Medicaid reimbursements for off-label uses of a "covered outpatient drug." Soc. Sec. Act §

155

1927(g)(1)(B)(i) and (k)(6) (permitting reimbursements for drug uses that "(i) are appropriate, (ii) are medically necessary, and (iii) are not likely to result in adverse medical results"). Thus, a prescription for Depakote® for off-label uses would not be reimbursed by Medicaid unless the conditions of § 1927(g)(1)(B)(i) were met.

432. Similarly, off-label indications qualify as "medically accepted indications" for Medicare reimbursement if they appear on the identified drug report compendia. Reimbursement under Medicare is only available to a physician if the services provided were "medically required," and he or she certifies that the services performed were medically necessary. 42 U.S.C. § 1395n(a)(2).

433. The two approved compendia, Drugdex and AHFS, at no time supported the off-label uses for the Depakote® Products, including the promotion by Abbott and the Institutional Defendants for the treatment of agitation and aggression associated with dementia:

| Drug | FDA-Approved Indications | Additional Uses Listed in Drugdex/AHFS Compendia |
|------|--------------------------|--------------------------------------------------|
| Depakote (divalproex sodium) | 1) Absence seizure, Simple and complex<br>2) Complex partial epileptic seizure<br>3) Manic bipolar I disorder<br>4) Migraine; Prophylaxis | 1) Alcohol withdrawal syndrome<br>2) Bipolar I disorder, Maintenance<br>3) Bipolar II disorder, Maintenance<br>4) Cluster headache<br>5) Headache disorder, chronic<br>6) Panic disorder<br>7) Periodic limb movement disorder<br>8) Posttraumatic headache<br>9) Schizoaffective disorder, bipolar type |

Apart from these indications, Medicaid and Medicare Part D could not reimburse for the off-label use of the Depakote® Products.

## XIV. ABBOTT'S PROMOTION OF THE DEPAKOTE® PRODUCTS CAUSED SUBMISSION OF FALSE CLAIMS TO FEDERAL PROGRAMS AND THE *QUI TAM* STATES

156

FILED UNDER SEAL
13788.00601/3695589v6

434.     Defendant Abbott promoted off-label indications of the Depakote® Products,

knowing they were not eligible for reimbursement because the indication was neither listed on

the drug reporting compendia or the relevant fiscal intermediary's Local Coverage

Determination ("LCD"), nor was it included on the Depakote® Products' FDA-approved product

labeling.  Furthermore, Defendant Abbott illegally promoted off-label uses without meeting the

FDA requirements, and without resubmitting the Depakote® Products to the FDA testing and

approval process as required by 21 U.S.C. § 360aaa *et seq.*  Thus, claims for reimbursement of

off-label Depakote® Products fail to meet the eligibility requirements of Federal Programs and

the *Qui Tam* States.  Abbott's off-label promotion of the Depakote® Products resulted in

reimbursement by Federal Programs and the *Qui Tam* States for numerous false claims.

435.     As part of their job responsibilities at Abbott, members of the LTC Sales Force

were expected to, and did, off-label promote the Depakote® Products to physicians and

healthcare professionals throughout the United States.  The illegal, off-label promotion caused

numerous false claims for the Depakote® Products to be submitted to the Government.

436.     Among the illegal claims resulting from Defendant Abbott's off-label promotion

were claims submitted by Belville Pharmacy Services ("Belville), an institutional pharmacy

located at 5825 Oberlin Drive, San Diego, California.  Belville later was sold to Neighborcare,

Inc. in late 2004, and in turn Neighborcare was purchased by Omnicare in July 2005.  As such,

Omnicare is the successor in interest to Belville.  Among the LTC facilities Belville serviced

were the following: Friendship Manor National City, Hillcrest Manor, Seacrest Village, Las

Villas Del Norte, Windsor Gardens National City, Windsor Gardens San Diego, and Evergreen

Carmel Mountain.  Among the physicians treating patients serviced by Belville who the Abbott

LTC Sales Force targeted for the promotion of the Depakote® Products on numerous occasions

FILED UNDER SEAL

were Dr. Alan Berkowitz (an Abbott KOL), Dr. John Gaidry, Dr. Lawrence Jaffe (an Abbott KOL), Dr. Michael Markopolous, Dr. Christine Mlot, Dr. Robert Yuhas, and Dr. Claudio Zawitkowski. At the time, Belville was the second largest LTC pharmacy in San Diego and had a signed rebate agreement with Abbott under which it agreed to use its consultant pharmacists to engage in an interchange program to convert prescriptions to the Depakote® Products.

437.    The table below provides additional examples of instances where a physician had been influenced to prescribe a Depakote® Product based on Abbott's off-label marketing and misrepresentations, and where claims for payment were made by the Institutional Pharmacies to the government:

| PATIENT | DATE | DRUG | PRESCRIBER |
| --- | --- | --- | --- |
| A | 9/2004 | Depakote Sprinkles 125 mg | Berkowitz |
| B | 9/2004 | Depakote Sprinkles 125 mg | Gaidry |
| C | 9/2004 | Depakote Sprinkles 125 mg | Markopoulos |
| D | 9/2004 | Depakote Sprinkles 125 mg | Mlot |
| E | 9/2004 | Depakote Sprinkles 125 mg | Yuhas |
| F | 9/2004 | Depakote Sprinkles 125 mg | Zawitkowski |

Relator Spetter has provided examples of thousands of false claims to the Government, but is not including those claims here for the purposes of HIPAA compliance. *See* 45 CFR § 164.502(j)(1).

## XV.    THE INSTITUTIONAL PHARMACY DEFENDANTS' FRAUDULENT SCHEME VIOLATED FEDERAL PROGRAM LIMITATIONS

438.    Defendants Omnicare and PharMerica each conspired with Defendant Abbott to violate federal program limitations on the use of the Depakote® Products as described in this

158

FILED UNDER SEAL
13378.0060.1/6925830v6
Case 1:10-cv-00006-JPJ-PMS   Document 36-2   Filed 12/03/10   Page 23 of 75   Pageid#: 611

Second Amended Complaint. By virtue of their conspiracies with Abbott, Defendants Omnicare and PharMerica directly enabled Abbott to make the Depakote® Products one of the most prescribed products in LTC and like facilities throughout the United States. In exchange for their role in the conspiracy, Defendants Omnicare and PharMerica reaped millions of dollars in reimbursements, rebates and other discounts on the Depakote® Products. These payments were *quid pro quos* for dramatically increasing utilization of the Depakote® Products which directly resulted in violations of federal program limitations in at least the following ways: (1) payment for "non-covered" drug products; (2) illegal remuneration under the Anti-Kickback Act (and analogous state anti-kickback laws); (3) discounts that Omnicare, PharMerica and/or Abbott should have reported to the government; (4) requests for inflated reimbursements from the government; and (5) violations of pharmacy laws that have a detrimental effect on the vulnerable senior population resident in the nation's nursing homes.

## COUNT I
## VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)

439. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

440. Defendants, knowingly or in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, beginning on January 1, 1998 and continuing until January 1, 2009 presented or caused to be presented to CMS, or other Federal Programs, false or fraudulent claims for payment, in violation of, *inter alia*, 31 U.S.C. § 3729(a)(1).

441. The United States of America, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, beginning on January 1, 1998 and continuing until January 1, 2009 paid for the Depakote® Products prescribed to patients enrolled in Federal Programs.

159

442.    As a result of Defendants' actions as set forth above in this Second Amended Complaint, the United States of America has been severely damaged.

## COUNT II
### VIOLATION OF FALSE CLAIMS ACT 31 U.S.C. § 3729(a)(3)
### AS AGAINST ALL DEFENDANTS

443.    Relator Spetter hereby incorporates by reference all allegations set forth in this Second Amended Complaint, as though fully set forth herein.

444.    Beginning on January 1, 1998 and continuing until January 1, 2009, Defendants Abbott, Omnicare, PharMerica, and DOES 1 through 100, knowingly combined and conspired to defraud the Government by getting false and fraudulent claims paid or allowed by the Government for payment.

445.    Each Defendant has acted with the intent to defraud.

446.    The Defendants have committed acts in furtherance of the object of this conspiracy as set forth above.

447.    As a proximate result of the aforesaid fraudulent conduct, the United States of America sustained damages in an amount to be proven at trial.

## COUNT III
### VIOLATION OF THE STATE OF CALIFORNIA
### FALSE CLAIMS ACT, CAL GOV'T CODE § 12650, *et seq.*

448.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

449.    This is a civil action brought by Relator Spetter on behalf of the State of California against Defendants under the California False Claims Act, CAL. CODE § 12652(c).

450.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented,

160

or caused to be presented to an officer or employee of the State of California or its political subdivisions false or fraudulent claims for payment, in violation of CAL. CODE § 12651(a)(1).

451. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to get false or fraudulent claims paid in violation of CAL. CODE § 12651(a)(2).

452. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of California or its political subdivisions in violation of CAL. CODE § 1265 1 (a)(7).

453. The State of California, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of state and state subdivision funded health insurance programs.

454. As a result of Defendants' actions as set forth above, the State of California, including its political subdivisions, has been severely damaged.

**COUNT IV**
**VIOLATION OF THE STATE OF COLORADO MEDICAID**
**FALSE CLAIMS ACT, COLO. REV. STAT. § 25.5-4-303.5, *et seq.***

455. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

FILED UNDER SEAL
13788.0060/1700588009.16

456.    This is a civil action brought by Relator Spetter on behalf of the State of Colorado against Defendants under the Colorado Medicaid False Claims Act, COLO. REV. STAT. § 25.5-4-303.5.

457.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented to, and may still be presenting or causing to be presented to, an officer or employee of the State of Colorado or its political subdivisions false or fraudulent claims for payment, in violation of COLO. REV. STAT. § 25.5-4-305(a).

458.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid in violation of COLO. REV. STAT. § 25.5-4-305(b).

459.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Colorado or its political subdivisions in violation of COLO. REV. STAT. § 25.5-4-305(f).

460.    The State of Colorado, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-

FILED UNDER SEAL
1337880060 26025820 v6

related management services for recipients of state and state subdivision funded health insurance programs.

461.    As a result of Defendants' actions as set forth above, the State of Colorado, including its political subdivisions, has been, and may continue to be, severely damaged.

**COUNT V**
**VIOLATION OF THE STATE OF CONNECTICUT**
**FALSE CLAIMS ACT, 2009 CONN. PUB. ACTS NO. 09-5,** *et seq.*

462.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

463.    This is a civil action brought by Relator Spetter on behalf of the State of Connecticut against Defendants under the Connecticut False Claims Act, 2009 Conn. Pub. Acts No. 09-5.

464.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented to, and may still be presenting or causing to be presented to, an officer or employee of the State of Connecticut or its political subdivisions false or fraudulent claims for payment, in violation of 2009 Conn. Pub. Acts No. 09-5 § 2(a)(1).

465.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid in violation of Conn. Pub. Acts No. 09-5 § 2(a)(2).

466.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

FILED UNDER SEAL

made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Connecticut or its political subdivisions in violation of Conn. Pub. Acts No. 09-5 § 2(a)(1).

467. The State of Connecticut, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state and state subdivision funded health insurance programs.

468. As a result of Defendants' actions as set forth above, the State of Connecticut, including its political subdivisions, has been, and may continue to be, severely damaged.

## COUNT VI
## VIOLATION OF THE STATE OF DELAWARE FALSE CLAIMS AND REPORTING ACT, DEL. CODE ANN. TIT. 6 § 1201, *et seq.*

469. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

470. This is a civil action brought on behalf of Relator Spetter on behalf of the Government of the State of Delaware against Defendants under the State of Delaware's False Claims and Reporting Act, DEL. CODE ANN. tit. 6, § 1203(b).

471. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented directly or indirectly, to an officer or employee of the Government of the State of Delaware false or fraudulent claims for payment or approval, in violation of DEL. CODE ANN. tit. 6, §1201 (a)( 1 ).

164

FILED UNDER SEAL
133788.00601/36035820v.6

472. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, directly or indirectly, false records or statements to get false or fraudulent claims paid or approved, in violation of DEL. CODE ANN. tit. 6, §1201(a)(2).

473. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, increase or decrease an obligation to pay or transmit money to the Government of Delaware, in violation of DEL. CODE ANN. tit. 6, § 120l(a)(7).

474. The Government of the State of Delaware, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health care programs funded by the Government of the State of Delaware.

475. As a result of Defendants' actions, the Government of the State of Delaware has been severely damaged.

### COUNT VII
### VIOLATION OF THE DISTRICT OF COLUMBIA
### FALSE CLAIMS ACT, D.C. CODE A § 2-308.13, *et seq.*

476. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

477. This is a civil action brought by Relator Spetter, in the name of the District of Columbia against Defendants under the District of Columbia False Claims Act, D.C. CODE ANN. § 2-308.15(a).

165

478. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented to an officer or employee of the District, a false or fraudulent claim for payment or approval, in violation of D.C. CODE ANN. § 2-308.14(a)(l).

479. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly used or caused to be used false records and/or statements to get false claims paid or approved by the District, in violation of D.C. CODE ANN. § 2-308.14(a)(2).

480. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the District, in violation of D.C. CODE ANN. § 2-308.14(a)(7).

481. The District of Columbia, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance upon the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the District.

482. As a result of Defendants' actions, as set forth above, the District of Columbia has been, and continues to be, severely damaged.

**COUNT VIII**
**VIOLATION OF THE STATE OF FLORIDA**
**FALSE CLAIMS ACT, FLA. STAT. 68-081, *et seq.***

483. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

166

484.     This is a civil action brought by Relator Spetter on behalf of the State of Florida against Defendants under the State of Florida's False Claims Act, FLA. STAT. ANN. § 68.083(2).

485.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented to officers or employees of the State of Florida or one of its agencies false or fraudulent claims for payment or approval, in violation of FLA. STAT. ANN. § 68.082(2)(a).

486.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims paid or approved by the State of Florida or one of its agencies, in violation of FLA. STAT. ANN. § 68.082(2)(b).

487.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Florida or one of its agencies, in violation of FLA. STAT. ANN. § 68.082 (2)( g).

488.     The State of Florida and its agencies, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance plans funded by the State of Florida or its agencies.

167

489.    As a result of Defendants' actions, as set forth above, the State of Florida and/or its agencies have been severely damaged.

**COUNT IX**
**VIOLATION OF STATE OF GEORGIA MEDICAID**
**FALSE CLAIMS ACT, GA. CODE ANN. § 49-4-168 (2007), *et seq.***

490.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

491.    This is a civil action brought by Relator Spetter, in the name of the State of Georgia, against Defendants pursuant to the State of Georgia Medicaid Fraud False Claims Act, GA. CODE ANN. § 49-4-168 (2007), *et seq.*

492.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or misrepresentation of material fact on an application for any benefit or payment under the Georgia Medicaid program, in violation of  GA. CODE ANN. § 49-4-168 (2007).

493.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of GA. CODE ANN. § 49-4-168 (2007).

494.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally concealed or

168

failed to disclose an event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of GA. CODE ANN. § 49-4-168 (2007).

495.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of GA. CODE ANN. § 49-4-168 (2007).

496.    The State of Georgia or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of Medicaid.

497.    As a result of Defendants' actions, as set forth above, the State of Georgia or its political subdivisions has been severely damaged.

**COUNT X**
**VIOLATION OF THE STATE OF HAWAII FALSE CLAIMS ACT**
**FALSE CLAIMS TO THE STATE,**
**HAWS REV. STAT. § 661-21, _et seq._**

498.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

499.    This is a civil action brought by Relator Spetter on behalf of the State of Hawaii and its political subdivisions against Defendants under the State of Hawaii's False Claims Act - False Claims to the State, HAW. REV. STAT. § 661-25.

169

500. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented to officers or employees of the State of Hawaii, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of HAW. REV. STAT. § 61-21(a)(l).

501. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made and used , false records or statements to get false or fraudulent claims paid or approved by the State of Hawaii, or its political subdivisions, in violation of HAW. REV. STAT. § 661-21(a)(2).

502. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Hawaii, or its political subdivisions, in violation of HAW. REV. STAT. § 661-21(a)(7).

503. The State of Hawaii, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance upon the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

504. As a result of Defendants' actions, as set forth above, the State of Hawaii and/or its political subdivisions have been severely damaged.

## COUNT XI
## VIOLATION OF THE STATE OF INDIANA FALSE CLAIMS

FILED UNDER SEAL
133788.00601/36025820v6

## AND WHISTLEBLOWER PROTECTION ACT,
## IND. CODE § 5-11-5.5, *et seq.*

505.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

506.    This is a civil action brought by Relator Spetter on behalf of the State of Indiana against Defendants under the State of Indiana False Claims and Whistleblower Protection Act, IND. CODE ANN. § 5-11-5.5-4(a).

507.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally presented, or caused to be presented, a false claim for payment or approval, in violation of IND. CODE ANN. § 5-11-5.5-2(b)(1 1.

508.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used a false record or statement to obtain payment or approval of false claims by the State of Indiana, in violation of IND. CODE ANN. § 5-11-5.5-2(b)(2).

509.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used false records or statements to avoid an obligation to pay or transmit money to the State of Indiana, in violation of IND. CODE ANN. § 5-11-5.5-2(a)(6).

510.    The State of Indiana, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of those claims and/or statements, paid for

171

13378\8\060\1/6925580.v6

prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

511.    As a result of Defendants' actions, as set forth above, the State of Indiana has been severely damaged.

**COUNT XII**
**VIOLATION OF THE STATE OF ILLINOIS**
**WHISTLEBLOWER REWARD AND PROTECTION ACT,**
**740 ILL. COMP. STAT. ANN. 175/1, *et seq.***

512.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

513.    This is a civil action brought by Relator Spetter on behalf of the State of Illinois against Defendants under the State of Illinois Whistleblower Reward and Protection Act, 740 ILL, COMP. STAT. ANN. 175/4(b).

514.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented to an officer or employee of the State of Illinois a false or fraudulent claim for payment or approval, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(I).

515.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State of Illinois, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(2).

516.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

172

made, used, or caused to be made or used false records or statements to conceal, avoid or decrease an obligation to pay or transmit money to the State of Illinois, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(7).

517.    The State of Illinois, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of those claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

518.    As a result of Defendants' actions, as set forth above, the State of Illinois has been severely damaged.

**COUNT XIII**
**VIOLATION OF THE STATE OF LOUISIANA**
**MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW,**
**LA. REV. STAT. § 46:437.1, *et seq.***

519.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

520.    This is a civil action brought by Relator Spetter on behalf of the State of Louisiana's medical assistance programs against Defendants under the State of Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. § 46:439.1.

521.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented false or fraudulent claims, in violation of LA. REV. STAT. § 46:438.3(A).

522.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

173

engaged in misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds, in violation of LA. REV. STAT. § 46:438.3(B).

523.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly submitted claims for goods, services or supplies which were medically unnecessary or which were of substandard quality or quantity, in violation of LA. REV. STAT, § 46:438.3 (D).

524.     The State of Louisiana, its medical assistance programs, political subdivisions and/or the Department, unaware of the falsity of the claims and/or statements made by Defendants, or their actions as set forth above, acted in reliance on the accuracy of Defendants' claims and/or statements in paying for prescription drugs and prescription drug-related management services for medical assistance program recipients.

525.     As a result of Defendants' actions, the State of Louisiana, its medical assistance programs, political subdivisions and/or the Department have been severely damaged.

### COUNT XIV
### VIOLATION OF THE STATE OF MARYLAND
### FALSE HEALTH CLAIMS ACT OF 2010, M.D. CODE ANN. Ch. 4, § 2-601, *et seq.*

526.     Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

527.     This is a civil action brought by Relator Spetter on behalf of the State of Maryland against Defendants under the Maryland False Health Claims Act of 2010, M.D. CODE ANN. ch. 4, § 2-601.

528.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

174

FILED UNDER SEAL
133788.00060\\26025820v6

presented or caused to be presented a false claim for payment or approval, in violation of M.D. CODE ANN. ch. 4, § 2-602(a)(1).

529. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to obtain payment or approval of claims by the State of Maryland or its political subdivisions in violation of M.D. CODE ANN. ch. 4, § 2-602(a)(2).

530. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Maryland or one of its political subdivisions, in violation of M.D. CODE ANN. ch. 4, § 2-602(a)(8).

531. The State of Maryland, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

532. As a result of Defendants' actions, as set forth above, the State of Maryland or its political subdivisions have been severely damaged.

**COUNT XV**
**VIOLATION OF THE COMMONWEALTH OF MASSACHUSETTS**
**FALSE CLAIMS ACT, MASS LAWS ANN. Ch. 12, § 5A, _et seq._**

533. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

175

FILED UNDER SEAL

534.    This is a civil action brought by Relator Spetter on behalf of the Commonwealth of Massachusetts against Defendants under the Massachusetts False Claims Act, MASS. LAWS ANN. ch. 12, § 5C(2).

535.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented a false claim for payment or approval, in violation of MASS. LAWS ANN, ch. 12, § 5B(1).

536.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to obtain payment or approval of claims by the Commonwealth of Massachusetts or its political subdivisions in violation of MASS. LAWS ANN. ch. 12,  § 5B(2).

537.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth of Massachusetts or one of its political subdivisions, in violation of MASS. LAWS ANN. ch. 12, § 5B(8).

538.    The Commonwealth of Massachusetts, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

FILED UNDER SEAL
13378800601/36035820v.6

539.    As a result of Defendants' actions, as set forth above, the Commonwealth of

Massachusetts or its political subdivisions have been severely damaged.

**COUNT XVI**
**VIOLATION OF THE STATE OF MICHIGAN MEDICAID**
**FALSE CLAIMS ACT, MICH. COMP. LAWS SERV. § 400.601,** *et seq.*

540.    Relator Spetter incorporates herein by reference the preceding paragraphs of the

Second Amended Complaint as though fully set forth herein.

541.    This is a civil action brought by Relator Spetter in the name of the State of

Michigan against Defendants under the State of Michigan Medicaid False Claims Act, MICH.

COMP. LAWS SERV. § 400.610a(l).

542.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made or caused to be made a false statement or false representation of a material fact in an

application for Medicaid benefits, in violation of MICH. COMP. LAWS. SERV. § 400.603(1).

543.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made or cause to be made a false statement or false representation of a material fact for use in

determining rights to a Medicaid benefit, in violation of MICH. COMP. LAWS. SERV. §

400.603(2).

544.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

concealed or failed to disclose an event affecting its initial or continued right to receive a

Medicaid benefit or the initial or continued right of any other person on whose behalf Defendants

has applied for or is receiving a benefit with intent to obtain a benefit to which Defendants are

177

not entitled or in an amount greater than that to which Defendants are entitled, in violation of MICH. COMP. LAWS. SERV. § 400.603(3).

545. Defendants, in possession of facts under which they are aware or should be aware of the nature of their conduct and that their conduct is substantially certain to cause the payment of a Medicaid benefit, knowingly presented or made or caused to be presented or made a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, in violation of MICH. COMP. LAWS. SERV. § 400.607(1).

546. The State of Michigan, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of Medicaid.

547. As a result of Defendants' actions, as set forth above, the State of Michigan or its political subdivisions have been severely damaged.

### COUNT XVII
### VIOLATION OF THE STATE OF MINNESOTA
### FALSE CLAIMS ACT, MINN. STAT. § 15C.01, *et seq.*

548. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

549. This is a civil action brought by Relator Spetter on behalf of the State of Minnesota against Defendants under the State of Minnesota False Claims Act, MINN. STAT. § 15C.01.

550. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented to, and may still be presenting or causing to be presented to, an officer

178

FILED UNDER SEAL

or employee of the State of Minnesota or its political subdivisions false or fraudulent claims for payment, in violation of MINN. STAT. § 15C.02(a)(1).

551.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid in violation of MINN. STAT § 15C.02(a)(2).

552.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Minnesota or its political subdivisions in violation of MINN. STAT. § 15C.02(a)(7).

553.    The State of Minnesota, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state and state subdivision funded health insurance programs.

554.    As a result of Defendants' actions as set forth above, the State of Minnesota, including its political subdivisions, has been, and may continue to be, severely damaged.

FILED UNDER SEAL

## COUNT XVIII
## VIOLATION OF STATE OF MONTANA FALSE
## CLAIMS ACT, MONT. CODE ANN. § 17-8-401, *et seq.*

555.     Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

556.     This is a civil action brought by Relator Spetter on behalf of the State of Montana against Defendants under the State of Montana False Claims Act, MONT. CODE ANN. § 17-8-406(1).

557.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented a false claim for payment or approval, in violation of MONT. CODE ANN. § 17-8-403( l)(a).

558.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved, in violation of MONT. CODE ANN. § 17-8-403(1)(b).

559.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Montana or one of its political subdivisions, in violation of MONT. CODE ANN. § 17-8-403( l)(g).

560.     The State of Montana, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims

180

and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

561.    As a result of Defendants' actions, as set forth above, the State of Montana or its political subdivisions have been severely damaged.

**COUNT XIX**
**VIOLATION OF THE STATE OF NEVADA**
**SUBMISSION OF FALSE CLAIMS TO STATE OR LOCAL**
**GOVERNMENT ACT, NEV. REV. STAT. ANN. § 357.010, _et seq._**

562.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

563.    This is a civil action brought by Relator Spetter on behalf of the State of Nevada against Defendants under the State of Nevada Submission of False Claims to State or Local Government Act, NEV. REV. STAT. ANN. § 357.080(1).

564.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented a false claim for payment or approval, in violation of NEV. REV. STAT. ANN. § 357.040( l)(a).

565.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to obtain payment or approval for false claims in violation of NEV. REV. STAT. ANN. § 357.040(1)(b).

566.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or

181

FILED UNDER SEAL

decrease an obligation to pay or transmit money to the State of Nevada or one of its political subdivisions, in violation of NEV. REV. STAT. ANN. § 357.040(1)(g).

567. The State of Nevada, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

568. As a result of Defendants' actions, as set forth above, the State of Nevada or its political subdivisions have been severely damaged.

**COUNT XX**
**VIOLATION OF STATE OF NEW HAMPSHIRE MEDICAID**
**FALSE CLAIMS ACT, N.H. REV. STAT. ANN. § 167:61-b, *et. seq.***

569. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

570. This is a civil action brought by Relator Spetter on behalf of the State of New Hampshire against Defendants under the State of New Hampshire Medicaid False Claims Act, N.H. REV. STAT. ANN. § 167:61-cII.(a).

571. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented a false claim for payment or approval, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(a).

572. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to get a fake claim paid or approved, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(b).

182

573.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Hampshire or one of its political subdivisions, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(e).

574.     The State of New Hampshire, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

575.     As a result of Defendants' actions, the State of New Hampshire or its political subdivisions have been severely damaged.

## COUNT XXI
## VIOLATION OF STATE OF NEW JERSEY
## FALSE CLAIMS ACT, N.J. STAT. ANN. § 265 (2007), *et seq.*

576.     Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

577.     This is a civil action brought by Relator Spetter in the name of the State of New Jersey, against Defendants pursuant to the State of New Jersey Fraud False Claims Act, N.J. STAT. ANN. § 265 (2007), *et seq.*

578.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or misrepresentation of material fact on an application for

183

any benefit or payment under the New Jersey Medicaid program, in violation of N.J. STAT. ANN. § 265 (2007).

579. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of N.J. STAT. ANN. § 265 (2007).

580. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally concealed or failed to disclose an event with an intent fraudulently to secure the benefit or payment cither in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of N.J. STAT. ANN. § 265 (2007).

581. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of N.J. STAT. ANN. § 265 (2007).

582. The State of New Jersey or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of Medicaid.

FILED UNDER SEAL
133788.00601/36035820v.6

583.     As a result of Defendants' actions, as set forth above, the State of New Jersey or its political subdivisions has been severely damaged.

## COUNT XXII
## VIOLATION OF STATE OF NEW MEXICO MEDICAID
## FALSE CLAIMS ACT, N.M STAT. ANN. § 27-14-1, *et seq.*

584.     Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

585.     This is a civil action brought by Relator Spetter on behalf of the State of New Mexico against Defendants under the State of New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-7(B).

586.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented a false or fraudulent claim for payment under the Medicaid program, in violation of N.M. STAT. ANN. § 27-14-4A.

587.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly presented, or caused to be presented, claims for payment under the Medicaid program that is not authorized or is not eligible for benefit under the Medicaid program, in violation of N.M. STAT. ANN. § 27-14-4B.

588.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to get a false or fraudulent claim paid or approved, in violation of N.M. STAT. ANN. § 27-14-4C.

FILED UNDER SEAL
133788.00601/36035820v.6

589. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Mexico or one of its political subdivisions, in violation of N.M. STAT. ANN. § 27-14-4E.

590. The State of New Mexico, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

591. As a result of Defendants' actions, as set forth above, the State of New Mexico or its political subdivisions have been severely damaged.

**COUNT XXIII**
**VIOLATION OF THE STATE OF NEW YORK**
**FALSE CLAIMS ACT, N.Y. CLS. ST. FIN. § 187** *et seq.*

592. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

593. This is a civil action brought by Relator Spetter on behalf of the State of New York against Defendants under the State of New York False Claims Act, N.Y. CLS St. Fin. § 190.2.

594. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented a false claim for payment or approval, in violation of N.Y. CLS St. Fin. § 189(a).

186

595. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved, in violation of N.Y. CLS St. Fin. § 189(b).

596. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New York or one of its political subdivisions, in violation of N.Y.CLS St. Fin. § 189(g).

597. The State of New York, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

598. As a result of Defendants' actions, as set forth above, the State of New York or its political subdivisions have been severely damaged.

**COUNT XXIV**
**VIOLATION OF THE STATE OF NORTH CAROLINA**
**FALSE CLAIMS ACT, N.C. GEN. STAT. § 1-605, *et seq.***

599. Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

600. This is a civil action brought by Relator Spetter on behalf of the State of North Carolina against Defendants under the North Carolina False Claims Act, N.C. GEN. STAT. § 1-605.

FILED UNDER SEAL
133788.00601/36035820v.6

601.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented a false claim for payment or approval, in violation of N.C. GEN. STAT. § 1-607(a)(1).

602.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to obtain payment or approval of claims by the State of North Carolina or its political subdivisions in violation of N.C. GEN. STAT. § 1-607(a)(2).

603.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of North Carolina or one of its political subdivisions, in violation of N.C. GEN. STAT. § 1-607(a)(7).

604.   The State of North Carolina, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

605.   As a result of Defendants' actions, as set forth above, the State of North Carolina or its political subdivisions have been severely damaged.

188

## COUNT XXV
## VIOLATION OF STATE OF OKLAHOMA MEDICAID
## FALSE CLAIMS ACT, OKLA. STAT. tit. 63, § 5053 (2007), *et seq.*

606.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

607.    This is a civil action brought by Relator Spetter, in the name of the State of Oklahoma, against Defendants pursuant to the State of Oklahoma Medicaid Fraud False Claims Act, OKLA. STAT. tit. 63, § 5053 (2007), *et seq.*

608.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or misrepresentation of material fact on an application for any benefit or payment under the Oklahoma Medicaid program, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

609.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

610.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally concealed or failed to disclose an event with an intent fraudulently to secure the benefit or payment either in a

189

FILED UNDER SEAL

greater amount or quantity than is due or when no benefit or payment is authorized, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

611.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of  OKLA. STAT. tit. 63, § 5053 (2007).

612.    The State of Oklahoma or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of Medicaid.

613.    As a result of Defendants' actions, as set forth above, the State of Oklahoma or its political subdivisions has been severely damaged.

**COUNT XXVI**
**VIOLATION OF STATE OF RHODE ISLAND**
**FALSE CLAIMS ACT, R.I. GEN. LAWS § 9-1.1-1 (2008),** *et seq.*

614.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

615.    This is a civil action brought by Relator Spetter, in the name of the State of Georgia, against Defendants pursuant to the State of Rhode Island Fraud False Claims Act, R.I. GEN. LAWS § 9-1.1-1 (2008), *et seq.*

616.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning

190

on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or misrepresentation of material fact on an application for any benefit or payment under the Rhode Island Medicaid program, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

617. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

618. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally concealed or failed to disclose an event with an intent fraudulently to secure the benefit or payment cither in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

619. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

620. The State of Rhode Island or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims

191

FILED UNDER SEAL

and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of Medicaid.

621.    As a result of Defendants' actions, as set forth above, the State of Rhode Island or its political subdivisions has been severely damaged.

**COUNT XXVII**
**VIOLATION OF THE STATE OF TENNESSEE MEDICAID**
**FALSE CLAIMS ACT, TENN. CODE *ANN.* § 71-5-181 *et seq.***

622.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

623.    This is a civil action brought by Relator Spetter in the name of the State of Tennessee against Defendants under the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-183(a).

624.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented to the State of Tennessee a claim for payment under the Medicaid program knowing it was false or fraudulent, in violation of TENN. CODE ANN. § 71-5-182(a)(l)(A).

625.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, records or statements to get false or fraudulent claims under the Medicaid program paid for or approved by the State of Tennessee with knowledge that such records or statements were false, in violation of TENN. CODE ANN. § 71-5-182(a)(l)(B).

626.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

192

made, used, or caused to be made or used, records or statements to conceal, avoid or decrease an

obligation to pay or transmit money to the State of Tennessee, relative to the Medicaid program,

with knowledge that such records or statements were false, in violation of TENN. CODE ANN.

§ 71-5-182(a)(1)(D).

627.    The State of Tennessee, unaware of the falsity of the claims and/or statements

made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for

prescription drugs and prescription drug-related management services for recipients of the

Medicaid program.

628.    As a result of Defendants' actions, as set forth above, the State of Tennessee has

been severely damaged.

**COUNT XXVIII**
**VIOLATION OF THE STATE OF TEXAS HUMAN**
**RESOURCES CODE, TEX. HUM. RES. CODE § 36.001 *et seq.***

629.    Relator Spetter incorporates herein by reference the preceding paragraphs of the

Second Amended Complaint as though fully set forth herein.

630.    This is a civil action brought by Relator Spetter in the name of the State of Texas

against Defendants under the State of Texas Human Resources Code, Medicaid Fraud Prevention

Chapter, TEX. HUM. RES. CODE § 36.101(a).

631.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, beginning

on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or

caused to be made a false statement or misrepresentation of material fact on an application for a

contract, benefit or payment under a Medicaid program, in violation of TEX. HUM. RES. CODE

§ 36.002(1).

193

632. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, beginning on January 1, 1998 and continuing until January 1, 2009 knowingly or intentionally made or caused to be made a false statement or misrepresentation of material fact that is intended to be used, and has been used, to determine a person's eligibility for a benefit or payment under the Medicaid program, in violation of TEX. HUM. RES. CODE § 36.002(2).

633. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, caused to be made, induced or sought to induce causing to be made, inducing or seeking to induce, the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid program in violation of TEX. HUM. RES. CODE § 36.002(4)(B).

634. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made a claim under the Medicaid program for a service or product that was inappropriate, in violation of TEX. HUM. RES. CODE § 36.002(7)(C).

635. The State of Texas, its political subdivisions or the Department, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of Medicaid.

636. As a result of Defendants' actions, as set forth above, the State of Texas, its political subdivisions or the Department has been severely damaged.

194

FILED UNDER SEAL
133788.00601/36025820v6

## VIOLATION OF THE COMMONWEALTH OF VIRGINIA FRAUD AGAINST TAXPAYERS ACT, VA CODE ANN. § 8.01-216.1, *et seq.*

637.     Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

638.     This is a civil action brought by Relator Spetter on behalf of the Commonwealth of Virginia against Defendants under the Commonwealth of Virginia Fraud Against Taxpayers Act, VA. CODE ANN. § 8.01-216.5, *et seq.*

639.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented to an officer or employee of the Commonwealth, a false or fraudulent claim for payment or approval, in violation of VA. CODE ANN. § 8.01-216.3(A)(l).

640.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims paid or approved by the Commonwealth, in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

641.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth, in violation of VA. CODE ANN. § 8.01-216.3(A)(7).

642.     The Commonwealth of Virginia, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance upon the accuracy of these claims and/or

FILED UNDER SEAL
133788.00601/36935820v.6

statements, paid for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

643.    As a result of Defendants' actions, as set forth above, the Commonwealth of Virginia, its political subdivisions or the Department has been severely damaged.

**COUNT XXX**
**VIOLATION OF THE STATE OF WISCONSIN**
**FALSE CLAIMS FOR MEDICAL ASSISTANCE, WIS. STAT. § 20.931 (2007), *et seq.***

644.    Relator Spetter incorporates herein by reference the preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

645.    This is a civil action brought by Relator Spetter on behalf of the State of Wisconsin against Defendant under the State of Wisconsin False Claims for Medical Assistance, WIS. STAT. § 20.931 (2007), *et seq.*

646.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented to any officer, or employee, or agent of the state, a false or fraudulent claim for medical assistance, in violation of WIS. STAT. § 20.931(2)(a) (2007).

647.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance, in violation of WIS. STAT. § 20.931(2)(b).

648.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly conspired, and may still be conspiring, to defraud the state by obtaining allowance or payment of a false claim for medical assistance; or knowingly made, used, or caused to be made or used a

196

false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program, in violation of WIS. STAT. § 20.931(2)(C).

649.    The State of Wisconsin, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance upon the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

650.    As a result of Defendants' actions, as set forth above, the State of Wisconsin, its political subdivisions or the Department has been severely damaged.

**WHEREFORE,** Relator Spetter prays for judgment against Defendants as follows:

A.    That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*, CAL. CODE § 12650, *et seq.*, COLO. REV. STAT. § 25.5-4-303.5, *et seq.*, 2009 CONN. PUB. ACTS NO. 09-5, *et seq.*, DEL. CODE ANN. tit. 6, § 1201, *et seq.*, D.C. CODE ANN. § 2-308.13, *et seq.*, FLA. STAT. ANN. § 68.081, *et seq.*, GA. CODE ANN. § 49-4-168, *et seq.*, HAW. REV. STAT. § 661-21, *et seq.*, IND. CODE ANN. § 5-11-5.5, *et seq.*, 740 ILL. COMP. STAT. ANN. § 1751, *et seq.*, LA. REV. STAT. § 437.1, *et seq.*, M.D. CODE ANN. ch. 4, § 2-601, *et seq.*, MASS. LAWS ANN. Ch. 12, §5A, *et seq.*, MICH. COMP. LAWS SERV. § 400.601, *et seq.*, MINN. STAT. § 15C.01, *et seq.*, MONT. CODE ANN. § 17-8-401, *et seq.*, NEV. REV. STAT. ANN. § 357.010, *et seq.*, N.H. REV. STAT. ANN. § 167:61-b, *et seq.*, N.J. STAT ANN. § 265, *et seq.*, N.M. STAT. ANN. § 27-14-1, *et seq.*, N.Y. CLS ST. FIN. § 187, *et seq.*, N.C. GEN. STAT. § 1-605, *et. seq.*, OKLA. STAT. tit. 63, § 5053, *et seq.*, R.I. GEN. LAWS § 9-1,1-1, *et seq.*, TENN. CODE ANN. § 71-5-181, *et seq.*, TEX. HUM. RES. CODE § 36.001, *et seq.*, VA. CODE ANN. § 8.01-216.1, *et seq.*, and WIS. STAT. § 20.931 (2007), *et seq.*;

FILED UNDER SEAL
133788.00601/36035820v.6

B.      That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the United States for each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than five thousand five hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) per each and every false claim as provided by 31 U.S.C. § 3729(a), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.      That Relator Spetter be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d), and under the *Qui Tam* States CAL. CODE § 12652(g), *et seq.*, COLO. REV. STAT. § 25.5-4-306(4), *et seq.*, 2009 CONN. PUB. ACTS NO. 09-5 § 5 (e), *et seq.*, DEL. CODE ANN. tit. 6, § 1205, *et seq.*, D.C. CODE ANN. § 2-308.15(f), *et seq.*, FLA. STAT. ANN. § 68.085, *et seq.*, GA. CODE ANN. § 49-4-168, *et seq.*, HAW. REV. STAT. § 661-27, *et seq.*, IND. CODE ANN. § 5-11-5.5-6(a), *et seq.*, 740 ILL. COMP. STAT. ANN. 175/4(d), *et seq.*, LA. REV. STAT. § 439.4, *et seq.*, M.D. CODE ANN. ch. 4, § 2-605(a)(1), *et seq.*, MASS. GEN. LAWS ch. 12, § 5F, *et seq.*, MICH. COMP. LAWS SERV. § 400.610a(9), *et seq.*, MINN. STAT. § 15C.13, *et seq.*, MONT. CODE ANN. § 17-8-410, *et seq.*, NEV. REV. STAT. ANN. § 357.220, *et seq.*, N.H. REV. STAT. ANN. § 167:61-e, *et seq.*, N.J. STAT ANN. § 265, *et seq.*, N.M. STAT. ANN. § 27-14-9, *et seq.*, N.Y. CLS St. Fin. § 190.6, *et seq.*, N.C. GEN. STAT. § 1-607(a), *et seq.*, OKLA. STAT. tit. 63, § 5053, *et seq.*, R.I. GEN. LAWS § 9-1,1-1, *et seq.*, TENN. CODE ANN. § 71-5-183, *et seq.*, TEX. HUM. RES. CODE § 36.110, *et seq.*, VA. CODE ANN. § 8.01-216.7, *et seq.*, and WIS. STAT. § 20.931, *et seq.*;

FILED UNDER SEAL
133788.00601/36035820v.6

D.      That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of California or its political subdivisions multiplied as provided for in CAL. CODE § 12651(a), plus a civil penalty of no more than ten thousand dollars ($10,000) per claim as provided by CAL. CODE § 12651(a), to the extent such multiplied penalties shall fairly compensate the State of California or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

E.      That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the Government of the State of Colorado multiplied as provided for in COLO. REV. STAT. § 25.5-4-305, plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000), as provided by COLO. REV. STAT. § 25.5-4-305(1), for each act in violation of the State of Colorado Medicaid False Claims Act to the extent such multiplied penalties shall fairly compensate the Government of the State of Colorado for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

F.      That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the Government of the State of Connecticut multiplied as provided for in 2009 Conn. Pub. Acts No. 09-5 § 2(b), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each act in violation of the State of Connecticut False Claims Act, as provided by Conn. Pub. Acts No. 09-5 § 2(b), to the extent such multiplied penalties shall fairly compensate the Government of the State of Connecticut for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

199

G.    That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the Government of the State of Delaware multiplied as provided for in DEL. CODE ANN. tit. 6, §1201(a), plus a civil penalty of not less than five thousand five- hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) for each act in violation of the State of Delaware False Claims and Reporting Act, as provided by DEL. CODE ANN. tit. 6, § 1201(a), to the extent such multiplied penalties shall fairly compensate the Government of the State of Delaware for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

H.    That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the District of Columbia, multiplied as provided for in D.C. CODE ANN. § 2-308.14(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each false claim, and the costs of this civil action brought to recover such penalty and damages, as provided by D.C. CODE ANN. § 2-308.14(a), to the extent such multiplied penalties shall fairly compensate the District of Columbia for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

I.    That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of Florida or its agencies multiplied as provided for in FLA. STAT. ANN. § 68.082, plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) as provided by FLA. STAT. ANN. § 68.082, to the extent such multiplied penalties shall fairly compensate the State of Florida or its

FILED UNDER SEAL
133788.00601/36035820v.6

agencies for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

J.      That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of Georgia or its political subdivisions multiplied as provided for in GA. CODE ANN. § 49-4-168, plus a civil penalty of not less than fifteen (15) percent or more than twenty five (25) percent of the proceeds per claim as provided by GA. CODE ANN. § 49-4-168.2, to the extent such multiplied penalties shall fairly compensate the State of Georgia or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

K.      That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of Hawaii, multiplied as provided for in HAW. REV. STAT. § 661-21(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) as provided by HAW. REV. STAT. § 661-21(a), to the extent such multiplied penalties shall fairly compensate the State of Hawaii for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

L.      That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of Indiana, multiplied as provided for in IND. CODE ANN. § 5-11-5.5-2, plus a civil penalty of at least five thousand dollars ($5,000) as provided by IND. CODE ANN. § 5-11-5.5-2, to the extent such multiplied penalties shall fairly compensate the State of Indiana for losses resulting from the various schemes undertaken by

201

Defendants, together with penalties for specific claims to be identified at trial after full discovery;

M.     That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of Illinois, multiplied as provided for in 740 ILL. COMP. STAT, ANN. 175/3(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000), and the costs of this civil action brought to recover such damages and penalty, as provided by 740 ILL. COMP. STAT. ANN. 175/3(a), to the extent such multiplied penalties shall fairly compensate the State of Illinois for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

N.     That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by Louisiana's medical assistance programs, multiplied as provided for in LA. REV. STAT § 438.6(B)(2), plus a civil penalty of no more than ten thousand dollars ($10,000) per violation or an amount equal to three times the value of the illegal remuneration, whichever is greater, as provided for by LA. REV. STAT § 438.6(B)(I), plus up to ten thousand dollars ($10,000) for each false or fraudulent claim, misrepresentation, illegal remuneration, or other prohibited act, as provided by LA. REV. STAT § 438.6(C)(l)(a), plus payment of interest on the amount of the civil fines imposed pursuant to Subsection B of § 438.6 at the maximum legal rate provided by La. Civil Code Art. 2924 from the date the damage occurred to the date of repayment, as provided by LA. REV. STAT. § 438.6(C)(l)(b), to the extent such multiplied fines and penalties shall fairly compensate the State of Louisiana's medical assistance programs for losses resulting from the various schemes undertaken by

202

Defendants, together with penalties for specific claims to be identified at trial after full discovery;

O.       That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of Maryland or its political subdivisions multiplied as provided for in M.D. CODE ANN. ch. 4, § 2-605(b)(1)(ii), plus a civil penalty of no more than ten thousand dollars ($10,000) per claim as provided by M.D. CODE ANN. ch. 4, § 2-602(b)(1)(i), to the extent such multiplied penalties shall fairly compensate the State of Maryland or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

P.       That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the Commonwealth of Massachusetts or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in MASS. LAWS ANN. ch. 12, § 5B, multiplied as provided for in MASS. LAWS ANN. ch. 12, § 5B, plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each false claim, pursuant to MASS. LAWS ANN. ch. 12, § 5B, to the extent such multiplied penalties shall fairly compensate the Commonwealth of Massachusetts or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

Q.       That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the State of Michigan or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for

203

in MICH. COMP. LAWS SERV. §§ 400.603-400.606, 400.610b, in order to fairly compensate the State of Michigan or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

R.     That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the government of the State of Minnesota multiplied as provided for in MINN. STAT. § 15C.02(a), plus a civil penalty of not less than five thousand five hundred dollars ($5,500) or more than eleven thousand dollars ($11,000), as provided by MINN. STAT. § 15C.02(a), for each act in violation of the State of Minnesota False Claims Act to the extent such multiplied penalties shall fairly compensate the Government of the State of Minnesota for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

S.     That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the State of Montana or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in MONT. CODE ANN. § 17-8-403(2), multiplied as provided for in MONT. CODE ANN. § 17-8-403(2), plus a civil penalty of up to ten thousand dollars ($10,000) for each false claim, pursuant to MONT. CODE ANN. § 17-8-403(2), to the extent such multiplied penalties shall fairly compensate the State of Montana or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

T.     That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the State of Nevada for the value of payments or benefits provided, directly or

204

indirectly, as a result of Defendants' unlawful acts, as provided for in NEV. REV. STAT. ANN. 357.040, multiplied as provided for in NEV. REV. STAT. ANN. § 357.040(1), plus a civil penalty of not less than two thousand dollars ($2,000) or more than ten thousand dollars ($10,000) for each act, pursuant to NEV. REV. STAT. ANN. § 357.040, to the extent such multiplied penalties shall fairly compensate the State of Nevada for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

U.     That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the State of New Hampshire or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in N.H. REV. STAT. ANN. § 167:6111, multiplied as provided for in N.H. REV. STAT. ANN. § 167:61II, plus a civil penalty of two thousand dollars ($2,000) for each false claim, pursuant to REV. STAT. ANN. § 167:61II, to the extent such multiplied penalties shall fairly compensate the State of New Hampshire or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

V.     That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of New Jersey or its political subdivisions multiplied as provided for in N.J. STAT. ANN. § 265, plus a civil penalty of not less than fifteen (15) percent or more than twenty five (25) percent per claim as provided by N.J. STAT. ANN. § 265, to the extent such multiplied penalties shall fairly compensate the State of New Jersey or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

205

W.       That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the State of New Mexico or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in N.M. STAT. ANN. § 27-14-4, multiplied as provided for in N.M. STAT. ANN. § 27-14-4, to the extent such multiplied penalties shall fairly compensate the State of New Mexico or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after fill discovery;

X.       That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the State of New York or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in N.Y. CLS St. Fin. § 189.1., multiplied as provided for in N.Y. CLS St. Fin. § 189.1., plus a civil penalty of not less than six thousand dollars ($6,000) or more than twelve thousand dollars ($12,000) for each false claim, pursuant to N.Y. CLS St. Fin. § 189.1., to the extent such multiplied penalties shall fairly compensate the State of New York or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

Y.       That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of North Carolina or its agencies multiplied as provided for in N.C. GEN. STAT. § 1-607(a), plus a civil penalty of not less than five thousand five hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) as provided by N.C. GEN. STAT. § 1-607(a), to the extent such multiplied penalties shall fairly compensate the State of North Carolina or its agencies for losses resulting from the various schemes undertaken

FILED UNDER SEAL
133788.00601/36035820v.6

by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

Z.     That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of Oklahoma or its political subdivisions multiplied as provided for in OKLA. STAT. tit. 63, § 5053, plus a civil penalty of not less than fifteen (15) percent or more than twenty five (25) percent per claim as provided by OKLA. STAT. tit. 63, § 5053.4, to the extent such multiplied penalties shall fairly compensate the State of Oklahoma or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

AA.     That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the State of Rhode Island or its political subdivisions multiplied as provided for in R.I. GEN. LAWS § 9-1,1-1, plus a civil penalty of not less than fifteen (15) percent or more than twenty five (25) percent per claim as provided by R.I. GEN. LAWS § 9-1,1-4, to the extent such multiplied penalties shall fairly compensate the State of Rhode Island or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

BB.     That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the State of Tennessee for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in TENN. CODE ANN. § 71-5-182, multiplied as provided for in TENN. CODE ANN. § 71-5-182(a)(l), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) pursuant

FILED UNDER SEAL
133788.00601/36035820v.6

to TENN. CODE ANN. § 71-5-182(a)(l), to the extent such multiplied penalties shall fairly compensate the State of Tennessee for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

CC. That judgment be entered in Relator Spetter's favor and against Defendants for restitution to the State of Texas for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in TEX. HUM. RES. CODE § 36.052(a)(l), multiplied as provided for in TEX. HUM. RES. CODE § 36.052(a)(4), the interest on the value of such payments or benefits at the prejudgment interest rate in effect on the day the payment or benefit was paid or received, for the period from the date the payment or benefit was paid or received to the date that restitution is made to the State of Texas, pursuant to TEX. HUM. RES. CODE § 36.052(a)(2), plus a civil penalty of not less than five thousand dollars ($5,000) or more than fifteen thousand dollars ($15,000) for each unlawful act committed that resulted in injury to an elderly or disabled person, and of not less than one thousand dollars ($1,000) or more than ten thousand dollars ($10,000) for each unlawful act committed that did not result in injury to an elderly or disabled person, pursuant to TEX. HUM. RES. CODE § 36.052(a)(3)(A) and (B), to the extent such multiplied penalties shall fairly compensate the State of Texas for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

DD. That judgment be entered in Relator Spetter's favor and against Defendants in the amount of the damages sustained by the Commonwealth of Virginia, multiplied as provided for in VA. CODE ANN. § 8.01-216.3(A), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) as provided by VA. CODE ANN. § 8.01-

208

216.3(A), to the extent such multiplied penalties shall fairly compensate the Commonwealth of Virginia for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

EE.     That judgment be entered in Plaintiffs' favor and against Defendant in the amount of the damages sustained by the State of Wisconsin or its political subdivisions multiplied as provided for in WIS. STAT. § 20.931(2), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) as provided by WIS. STAT. § 20.931(2), to the extent such multiplied penalties shall fairly compensate the State of Wisconsin or its political subdivisions for losses resulting from the various schemes undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

FF.     That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

GG.     That judgment be granted for Relator Spetter against Defendants for all costs and reasonable expenses, including, but not limited to, investigative costs, court costs, expert fees and all attorneys' fees incurred by Relator Spetter in the prosecution of this suit; and

HH.     That Relator Spetter be granted such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Relator Spetter demands a trial by jury of all issues so triable.

FILED UNDER SEAL
133788.00601/36035820v.6

Dated: November 30, 2010

W. Scott Simmer (admitted *pro hac vice*)
Thomas J. Poulin (admitted *pro hac vice*)
Blank Rome LLP
Watergate
600 New Hampshire Avenue, NW
Washington, DC 20037
Telephone:  (202) 772-5967
Facsimile:   (202) 572-8412

Nicholas C. Harbist (admitted *pro hac vice*)
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103
Telephone:  (215) 569-5500
Facsimile:   (215) 569-5555

Wyatt B. Durrette, Jr. (VA Bar # 4719)
John B. Russell, Jr. (VA Bar # 17991)
Kenneth D. McArthur, Jr. (VA Bar #39467)
DurretteBradshaw, PLC
Bank of America Center, 16th Floor
1111 East Main Street
Richmond, Virginia 23219
Telephone:  (804) 775-6900
Facsimile:   (804) 775-6911

*Counsel for* Relator Spetter

FILED UNDER SEAL
133788.00601/36035820v.6